GEORGE P. TAYLOR *vs.* THE DANIELSONVILLE COTTON
COMPANY.

First Judicial District, Hartford, May Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

One who owns all the stock of a manufacturing corporation that has
no creditors virtually owns all its property.

The plaintiff owned all the stock of the defendant company and ran
the business as if it were his own. Having paid all debts of the
company except one secured by mortgage, the plaintiff agreed
with *C* and others to sell the mill to them for a stated sum above
the mortgage, which they were to assume, and also all personal
property and supplies connected with the mill and suitable for
use therein, at their fair market value. As a better way of carrying
out the sale, the plaintiff, at the suggestion of *C*, transferred to
him and his nominees all the capital stock of the company, where-
upon, after *C's* election as treasurer and general manager, he
agreed with the plaintiff in writing, in the name of the company
and with the approval of all its directors, that it would take at a
fair market value "all mill supplies that are suitable and now in
the mill," the same to be "looked over" by the mill superintendent
and a representative of the plaintiff. In a suit on this agreement
it was *held:*—

1. That this instrument was properly regarded as a contract of the
corporation, and for which there was a sufficient consideration;
that even if the legal title to the personal property was already in
the company, it was proper for it to repay to the plaintiff such
amount as he had expended from his own funds in buying the
supplies and in paying the company's debts; and that this result
was accomplished, in effect, by the transaction in question.

2. That under these circumstances, the statement made by the plain-
tiff in good faith to *C*, that he owned the personal property, was
of no importance, even if technically untrue.

3. That evidence of the written or oral statements of the plaintiff to
*C* and others was properly received, not for the purpose of altering
or varying the written contract of purchase, but as tending to
show the real ground upon which he claimed to own the mill sup-
plies, and also his good faith from the beginning to the end of his
connection with the defendant company.

4. That the buyer did not have the sole right to determine what sup-
plies were "suitable"; and that if the parties did not agree upon
that point it became a question of fact for the trial court or for
the jury.

A witness testified that the amount claimed for the supplies by the plaintiff was their fair market value, as near as one could determine that, assuming that they were new. *Held* that it was within the discretion of the trial judge to admit this testimony, subject to the production of proof that the supplies were in fact new.

Argued May 4th—decided June 8th, 1909.

ACTION to recover for mill supplies alleged to have been sold to the defendant, brought to and tried by the Superior Court in Windham County, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff for $2,122, and appeal by the defendant. *No error.*

The court found these facts: The defendant is a corporation engaged in the manufacture of cloth. In July, 1899, its property, real and personal, was mortgaged to the People's Savings Bank of Providence to secure its notes to the amount of $80,000. Said bank also held in pledge all the outstanding stock of the defendant company. With the intention of purchasing the property of the company and carrying on the business in his own name, the plaintiff commenced negotiations with said savings-bank, but learning that they could not give a title without foreclosing their mortgages, he, at the suggestion of the bank, purchased all the outstanding stock of the company. All the certificates of stock, excepting a very small amount which was without consideration transferred to members of his family, were transferred to the plaintiff; he and said members of his family were elected directors; he was chosen treasurer and general manager, and from that time until the sale of the stock to the Cochranes, in 1901, as hereinafter stated, the plaintiff conducted the business as if it were his own. The company was kept alive by the election of directors and officers, but no dividends were declared. The plaintiff took the income from the business and furnished all the money for the purchase of supplies and the carrying on of the business, and paid the taxes assessed against the company. He generally used the company income in making purchases

for the business, but with certain exceptions deposited the moneys received from the business in his own name. He kept no account between himself and the company. No person but the mortgagees and the plaintiff had in fact any actual interest in the said plant and property during the plaintiff's connection with said business, and the plaintiff at all times acted in the honest belief that he was the actual owner thereof and had the right to dispose of it as he saw fit. Before the sale to the Cochranes as hereinafter set forth, the plaintiff paid all the claims connected with said business, whether against the company or against himself individually.

In the spring of 1901, one J. Eugene Cochrane, representing himself and his father, agreed with the plaintiff for the purchase from him of said mill plant and all the personal property and supplies then connected therewith, a part of which was of the original purchase by the plaintiff and the remainder had been since purchased by him, by which agreement the Cochranes were to assume the mortgage upon the mill property, to pay to the plaintiff $9,000 and the fair market value of so much of the personal properties as might be suitable for the business. As the better way of carrying out the sale, it was agreed, at the suggestion of Cochrane, that the plaintiff should transfer to the Cochranes all the stock of the company, and said stock was thereupon, on the 26th of April, 1901, in the proportion directed by said J. Eugene Cochrane, transferred by the plaintiff to said J. Eugene and John and Pauline T. Cochrane, and one Joseph Tufts, and at a meeting of said new stockholders said J. Eugene, John and Pauline T. Cochrane were elected new directors, and J. Eugene Cochrane treasurer of said company, and immediately thereafter at least two of the stockholders returned to the room where the plaintiff was waiting, and thereupon J. Eugene Cochrane signed an agreement which was accepted by the plaintiff, containing the following: "It is further understood that the Danielsonville

Cotton Co., of which I am now treasurer, will take at a fair market value and pay for in cash to you all the personal property in the way of mill supplies, etc., that are suitable and now at the mill at Danielson, same to be looked over by our superintendent at the first opportunity with your representative." This agreement was fully understood by the directors of the company. The plaintiff retained the keys to the mill and the control of said personal property until the signing of said agreement. Soon thereafter the plaintiff prepared a list of the suitable personal property and supplies which were at the mill, and sent it to J. Eugene Cochrane as treasurer. The defendant, through Cochrane and the superintendent of the company, revised said list, rejecting certain articles as unsuitable, and offered to pay for articles thereon to the amount of $750. The plaintiff refused to accept said sum. The defendant has made use of a part but not all of said property. Fifteen hundred dollars was the fair market value of the said personal property and supplies suitable for use as stated in said contract. No claim was made that the plaintiff was not the owner of said personal property until after this suit was brought. Judgment was rendered for the plaintiff for $2,122.50.

One Brierly, having testified as a witness for the plaintiff that he was engaged in the machinery and supply business and was familiar with the price of mill supplies in 1901, was permitted, against defendant's objection, to state that the prices charged in the list of articles and supplies submitted to the defendant, as aforesaid, were "very fair, as near as one could make," assuming the articles were new.

Against the defendant's objection the court admitted in evidence the following: letters written by J. E. Cochrane to the plaintiff before the execution of the contract concerning the proposed purchase of this property; conversations concerning such sale between Cochrane and the plaintiff previous to the execution of the written agreement; the declaration of the attorney of J. Eugene Cochrane, made

in his, John Cochrane's and the plaintiff's presence, after having read the written agreement, that it was "all right"; leaves from the plaintiff's personal cash book, checks for pay-rolls, bank-books in his own name, his checks on such bank and the check-book stubs; a letter from one Hazard, and evidence of conversations between the plaintiff and the officers of the People's Savings Bank regarding the manner in which the plaintiff purchased the property in question from said People's Bank.

*Donald G. Perkins,* with whom was *Harry E. Back,* for the appellant (defendant).

*Charles E. Perkins* and *Charles E. Searls,* for the appellee (plaintiff).

HALL, J.　Although in the writing which is the basis of this action, J. Eugene Cochrane speaks in the first person, the trial court properly held the written instrument to be a contract of the defendant. By its terms the company was to receive and pay for the goods. It is signed, "Danielsonville Cotton Co., J. Eugene Cochrane, *Treas.*" It is found that Cochrane was a director and the treasurer of the company, and the answer admits that he was its general manager. The directors fully understood this agreement, and that the company was to pay the plaintiff, and with such understanding the defendant received the goods.

There was a sufficient consideration for the promise to pay for the mill supplies in question. Even if the company, at the time of the written agreement, had the legal title to this personal property, it could make a valid promise to pay the market value of them to one to whom it was justly due, and to whom the company was justly indebted. Before the agreement of April 26th, 1901, was executed, Cochrane, the defendant's treasurer and manager, had learned that the

plaintiff was the owner of all the stock of the company, and therefore, in the absence of any company creditors, virtually the owner of all the property of the company. Cochrane, at first, negotiated for the purchase of the property itself from the plaintiff, as the owner of it. Although he may not have been informed of all the details of the manner in which the plaintiff had conducted the business while he owned the stock, yet when it was arranged that there should be a transfer of the stock to the Cochranes instead of a transfer of the property itself, and that the company should continue in existence under the management of the Cochranes, J. Eugene Cochrane was informed and fully understood that the plaintiff's financial relations with the company were such, or, upon payment by the plaintiff of all the debts of the company, would be such, that the plaintiff would be entitled to be paid a fair value for the suitable mill supplies on hand. The plaintiff, in effect, claimed that he had used his own funds in purchasing these supplies, and that upon the payment by him of all outstanding claims against the company they should be regarded as his individual property and paid for as such. Just how much of his private funds the plaintiff had expended in the purchase of these goods and in the payment of the debts of the company is not found. Apparently all the parties were satisfied that it was sufficient to justify his claim that he had individually purchased these supplies, and it does not appear that such conclusion was incorrect. If the plaintiff had in effect paid for these supplies with his private funds, and had not been repaid what he had so expended, it was immaterial whether, when the agreement in question was made, the title to the supplies was in the plaintiff or in the company. If the plaintiff owned them the company could lawfully purchase them of him. If the company owned them it could lawfully agree to pay the just claim which the plaintiff had against it, for the money he had individually expended in buying the supplies and in paying the company's debts. The agree-

Taylor *v.* Danielsonville Cotton Co.

ment of the defendant to pay the value of the supplies may be regarded as a settlement by the plaintiff and the company of the former's claim against the latter. It was a valid agreement.

The agreement is not to be construed as a promise by the defendant to pay for only such supplies as it should decide were suitable. The words of the agreement are "supplies, etc., that are suitable and now at the mill." The plaintiff had the same voice as the defendant in deciding what supplies were suitable. They were to be "looked over" by the defendant's superintendent and a representative of the plaintiff. The agreement contains no provision for deciding the question of suitability in the event of a disagreement of these two persons. It was a proper question to be decided by the trial court.

The facts show no fraud upon the part of the plaintiff. The finding is that his statements to Cochrane were made in good faith. It was of no consequence if he was mistaken in saying that he owned the supplies, if in fact the company was indebted to him to the amount of their value, for money expended by him individually in paying for them.

It was within the discretion of the trial court to admit the testimony of the witness Brierly that the value of the supplies, assuming they were new, was fairly stated in the list submitted to him, the plaintiff's attorney having stated to the court that it would be proved that the articles were in fact new.

We find no error in the other rulings of the court complained of. It is unnecessary to discuss them separately. Generally the facts permitted to be proved against the defendant's objection, as above set forth, tended to show the real ground of the plaintiff's claimed ownership of the supplies, and that he had acted in good faith. None of this evidence was admitted for the purpose of in any way altering or modifying the written agreement between the plaintiff and defendant.

The requests for corrections of the finding are denied. There is no error.

In this opinion the other judges concurred.